(A.R.D. 113)

UNITED STATES *v.* THE HEYMAN CO., INC.

Entry No. 904780.

Third Division, Appellate Term

(Decided October 2, 1959)

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the appellee.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., concurring

RICHARDSON, Judge: This is an appeal from a judgment of a single judge sitting in reappraisement in the second division, reported as *The Heyman Co., Inc.* v. *United States*, 39 Cust. Ct. 707, Reap. Dec. 9033, which sustained an appeal from the appraiser's decision and held that the dutiable value of an importation of sisal pads per pound from Merida, Yucatan, Mexico, was the statutory export value of similar sisal pads per pound net packed, f.o.b. Mexico City.

The merchandise consists of pads, composed wholly of henequen fiber, about one-quarter of an inch in thickness and weighing approximately 3 ounces per square foot, manufactured by Progress Padding Co., S.A., of Merida, Yucatan, Mexico (hereinafter called Progress), and exported from Merida, Yucatan, Mexico, on or about May 23, 1955. It was entered at the port of New York, at the invoice price of $0.09072 per pound, less nondutiable charges for inland freight, handling at the port of exportation, consular invoice, and ocean freight, as invoiced. The merchandise was appraised on the basis of the alleged statutory export value of similar sisal pads, composed of 100 per centum henequen fiber, as export value is defined in 19 U.S.C.A., section 1402(d) (§ 402(d), Tariff Act of 1930), at $0.10 per pound, less nondutiable charges from the place of shipment, Merida, Yucatan, Mexico.

The statutory definitions of foreign and export values are as follows:

19 U.S.C.A., section 1402(c) (§ 402(c), Tariff Act of 1930, as amended):

### Foreign value

(c) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

19 U.S.C.A., section 1402(d) (§ 402(d), Tariff Act of 1930):

### Export value

(d) The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The parties have stipulated as follows:

The merchandise at bar consists of pads of 100 percent henequin [sic] fiber about one-quarter inch in thickness, manufactured by Progress Padding Co., S.A., of Merida, Yucatan, Mexico, and that the pads weigh approximately three ounces per square foot. They were appraised on the basis of the statutory export value, as defined in section 402(d) of the Tariff Act of 1930, of similar pads of 100 percent henequin [sic] fiber, manufactured or produced by Cordeleria Santa Ines, S.A., of Merida, Yucatan, Mexico.

There is no foreign or export value, as those terms are defined in section 402(c) or 402(d) of the Tariff Act of 1930, for "such" merchandise, manufactured or produced by Progress Padding Co., S.A., of Merida, Yucatan, Mexico.

If a foreign value, as defined by section 402(c), *supra*, exists for "similar" merchandise, manufactured or produced by Cordeleria Santa Ines, S.A., of Merida, Yucatan, Mexico, then such foreign value is no higher than the appraised value.

Cordeleria Santa Ines, S.A., of Merida, Yucatan, Mexico, manufactures or produces pads of 100 percent henequin [sic] fiber, which merchandise is similar to the instant imported merchandise.

The principal market of Mexico for the sale of pads of 100 percent henequin [sic] fiber for home consumption or for exportation to the United States is Merida, Yucatan, Mexico.

Fibras Duras de Mexico, S.A., of Mexico City, Mexico, manufactures or produces pads of 100 percent ixtle (istle) fiber and that such merchandise was freely offered for sale for home consumption and for exportation to the United States at all times pertinent in the principal market of Mexico City, D.F., Mexico, for such ixtle (istle) fiber pads.

The usual wholesale quantity in the ordinary course of trade for the sale of 100 percent henequin [sic] pads in the principal market of Merida, Yucatan, Mexico, for exportation to the United States is a carload lot of from 20,000 to 24,000 pounds.

The usual wholesale quantity in the ordinary course of trade for the sale of 100 percent ixtle (istle) fiber in the principal market of Mexico City, D.F., Mexico, whether for domestic consumption or for exportation to the United States is a carload lot of from 20,000 to 24,000 pounds.

The appellee introduced in evidence an affidavit of Halim R. Gaber, manager of Progress, the exporter herein (plaintiff's collective exhibit 1), in which he substantiates the stipulated facts and states, among other things, that pads for the bedding and upholstery industries,

whether manufactured of henequen, sisal, or istle, are "first opened or fluffed, then garnetted or carded and finally loomed. Barbed needles are driven through the loose batt causing some of the fiber to be driven through the batt holding it tightly matted. The cost of manufacture is practically the same for each fiber and the uses of the pads are the same."

The appellee also introduced in evidence an affidavit of Pedro Montalvo Burgos, submanager of Santa Ines, executed on February 24, 1956 (plaintiff's collective exhibit 2). He stated, among other things, that his company and Progress are the only manufacturers and sellers of sisal or henequen fiber pads in Yucatan and that there are no sales in Yucatan for home consumption; *that his company sold its pads for exportation to the United States only to a limited number of purchasers and that there was no single price to all purchasers*. He also stated that the process and costs of manufacture of sisal and palma fiber pads are the same and the uses of each pad are the same.

The appellant introduced in evidence a Treasury report (defendant's collective exhibit B), in which it is stated that Montalvo, on July 25 and 27, 1956, "emphatically stated that his firm *does not* restrict its sales to certain American importers. He advised that he *is willing* to sell to all purchasers, *who would* meet his prices." [Emphasis added.] In an affidavit, dated July 30, 1956, Montalvo stated that he *could* sell to United States firms (other than the only two customers his firm had in the United States from December 1954 to July 1956, Hemley Supply Co. of Brooklyn, N.Y., and Henley Paper Co. of High Point, N.C.), if they *would* meet his prices.

The appellee introduced in evidence two affidavits of Antonio Garcia, managing director of Fibras Duras (plaintiff's collective exhibit 3 and plaintiff's exhibit 4), in which it was established that the price for home consumption at all times relevant hereto was $0.075 per pound (or approximately 2.06 Mexican pesos per kilogram) and for exportation to the United States was $0.075 per pound, f.o.b. Mexico City, in the usual wholesale quantity and in the ordinary course of trade. He also stated that the pads of his company and those of Progress and Santa Ines were used for the same purposes in the bedding and upholstery industries.

The appellant introduced in evidence a report of an interview with Garcia (defendant's collective exhibit C), in which the freely offered export price of Fibras Duras at the time of exportation of the shipment before the court was shown to be $0.075 per pound, f.o.b. Mexico City.

The trial court made the following findings of fact:

1. The merchandise involved in this case consists of sisal pads of 100 per centum henequen fiber, about one-quarter of an inch in thickness and weighing approximately 3 ounces per square foot, manufactured by Progress Padding Co., S.A., of Merida, Yucatan, Mexico.

2. At or about the date of exportation of the merchandise at bar, Progress did not offer its merchandise for sale for home consumption in Mexico.

3. All sales by Progress for exportation to the United States were restricted to an exclusive agent.

4. Similar pads of 100 per centum henequen fiber are manufactured by Cordeleria Santa Ines, S.A., of Merida, Yucatan, Mexico.

5. At or about the date of exportation herein, Santa Ines did not offer its pads for sale for home consumption in Mexico.

6. At or about the date of exportation herein, the price at which Santa Ines sold its merchandise for exportation to the United States was not the same for all purchasers.

7. The appraised value of $0.10 per pound, less nondutiable charges, less ocean freight at $14, plus 2.2 per centum per 1,000 kilos, net packed on gross weight, was predicated upon sales made by said Santa Ines.

8. Similar pads composed of 100 per centum ixtle de palma (istle) fiber are manufactured by Fibras Duras de Mexico, S.A., of Mexico City, D.F., Mexico.

9. At all times pertinent hereto, Duras freely offered and sold its merchandise for exportation to the United States at $0.075 per pound, net packed, f.o.b. Mexico City, in the usual wholesale quantities and in the ordinary course of trade, and its sales for home consumption in Mexico were not higher.

10. The principal market in Mexico for the sale of 100 per centum henequen pads is Merida, Yucatan, Mexico, and for the sale of 100 per centum ixtle de palma (istle) fiber pads is Mexico City, D.F., Mexico.

11. The usual wholesale quantity involved in the sale of such or similar merchandise is a carload lot of from 20,000 to 24,000 pounds.

Upon these findings, the trial court concluded that:

1. There is no statutory foreign or export value for such or similar sisal pads composed of 100 per centum henequen fiber.

2. The proper basis for the appraisement of the instant merchandise is the export value of similar sisal pads composed of 100 per centum ixtle de palma (istle) fiber.

3. The statutory export value of similar sisal pads composed of 100 per centum ixtle de palma (istle) fiber is $0.075 per pound net packed, f.o.b. Mexico City.

4. There is no higher foreign value for such or similar merchandise.

We are fully in accord with the findings of fact and conclusions of law based on the findings of fact of the trial court. There is, however, one important ruling on evidence by the trial court on which its findings are based which the appellant contends was error and which requires examination. The trial court concluded that there was no foreign or export value for such or similar sisal pads, composed of 100 per centum henequen fiber, manufactured by Progress or Santa Ines at Yucatan. It reached the conclusion that there was no foreign value because neither company offered its merchandise for sale for consumption in Mexico. It reached the conclusion that there was no export value by Progress because it was so stipulated and substantiated by an affidavit from Gaber, manager of Progress; and that there was no export value for Santa Ines because the court considered the

affidavit given by Montalvo to appellee to be contradictory to the one given by him to appellant as to whether or not Santa Ines had a freely offered price to all purchasers and thus rejected both. The rejection of Montalvo's two affidavits we consider an error but not a reversible error, since the evidence supports the findings of fact. In our opinion, the two affidavits are not contradictory or inconsistent. The two affidavits can easily be reconciled. In the first affidavit (plaintiff's collective exhibit 2), executed on February 24, 1956, Montalvo stated that Santa Ines did not freely offer its pads to all purchasers in the United States because it was *the policy of the company to limit its sales* to one dealer in any given area of the United States. In Montalvo's second affidavit (defendant's collective exhibit B), executed July 30, 1956, he stated that *"at the present time we are only selling to two United States firms, but we could sell to other firms if our prices were accepted."* [Emphasis added.] In the first affidavit, Montalvo describes the practice of his firm *during the years 1954 and 1955.* The involved importation was in 1955. When the second affidavit is read together with the report of the Treasury representative, dated August 10, 1956, it is clear that the practice of the company in July 1956 had not changed from what it was during 1954 and 1955, and the company was selling only to the same two customers, but the company stated a capacity to sell to other firms if its prices were accepted. It made no statement as to offers in July 1956 or in the future. Nothing in the second affidavit contradicts what Montalvo said in his first affidavit with respect to the *modus operandi* of his company during the period of the importation in question. Furthermore, it is the duty of the court in support of a judgment to harmonize alleged inconsistences wherever possible. *Monica* v. *Pelicas*, 281 P. (2d) 269, 271. The facts in this case make it easy for the court to perform this duty.

The conclusion that there was no single uniform price for all purchasers from Santa Ines was based on its practice of selling at a single uniform price of $0.10 per pound, c.i.f. any United States port, despite ocean freight differentials of $14, plus 2.2 per centum to Gulf ports, and $22, plus 2.2 per centum to Atlantic ports. C.i.f. "stands for the words cost, insurance and freight; and mean that the price quoted and agreed upon covers not only the cost of the goods at the point of shipment, but their insurance and freight at the point of destination." *Williston on Sales*, volume 2, section 280C, 103. *Madierense Do Brasil* v. *Stulman-Emrick Lumber Co.*, 147 Fed. (2d) 399, 402. The deduction of varying ocean freight rates from the $0.10 per pound resulted in different net prices, so that there were two different amounts representing export value. Export value is defined as the market value or price at which such or similar merchandise is freely offered for sale to all purchasers, and it has been held that the statute does not contemplate the existence of more than one market

value or price for such or similar merchandise at the same time. *United States* v. *Minkus*, 21 C.C.P.A. (Customs) 382, T.D. 46912.

Since Santa Ines was the only company in Merida, Yucatan, Mexico, manufacturing merchandise similar to that of Progress, and it is clearly established that Santa Ines was not freely offering its merchandise to all purchasers at a single price at the time of exportation, it follows that there was no export value from Merida, Yucatan, Mexico, as that value is determined in 19 U.S.C.A., section 1402(d) (§ 402(d), Tariff Act of 1930). *United States* v. *Kellogg Co.*, 19 Cust. Ct. 330, Reap. Dec. 7456. Thus, the presumption of correctness of the finding of the appraiser is overcome, since he used the sales of Santa Ines as the basis of his appraisement.

According to the evidence in the record, Fibras Duras of Mexico City freely offered ixtle (istle) fiber for sale to all purchasers for export to the United States at $0.075 per pound, net packed, f.o.b. Mexico City, Mexico, and the foreign value thereof was not higher; and ixtle (istle) fiber and henequen fiber were manufactured in the same way and were used for the same purposes in the bedding and upholstery industries. Appellant does not dispute similarity of construction and use, but points to a difference in raw material and cost thereof as evidence of dissimilarity. The differential in cost of the three typical pads adverted to in the case is not sufficient to negative commercial interchangeability.

Similarity in the methods of construction, similarity of use, and commercial interchangeability, all of which are present in this case, are sufficient to bring the merchandise of Fibras Duras within the meaning of "similar" in 19 U.S.C.A., section 1402(d) (§402(d), Tariff Act of 1930).

* * * The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the competent materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. [*United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T.D. 42837.]

See also *H. J. Heinz Company* v. *United States*, 43 C.C.P.A. (Customs) 128, C.A.D. 619, for the same effect.

The court is of the opinion that the trial judge did not commit reversible error in his ruling on the two affidavits of Montalvo, and for the reasons carefully stated by the court below on the merits of the case, whose findings of fact and conclusions of law set forth in this opinion we adopt as our own, the decision and judgment appealed from are affirmed. The motion for rehearing was properly denied.

Judgment will be entered accordingly.

CONCURRING OPINION

DONLON, Judge: I agree with the majority that the two affidavits in evidence (plaintiff's collective exhibit 2 and defendant's collective exhibit B) can be reconciled, and that the trial judge, therefore, erred in rejecting them both as being irreconcilable. However, I do not go along with the so-called reconciliation which the majority seem to adopt.

The first affidavit (exhibit 2) is fairly clear. The Mexican exporter's *policy* was to limit sales to a single dealer in any one area of the United States. The second affidavit (exhibit B) says that the Mexican exporter had only two dealers, and it would have welcomed more. There is nothing in the second affidavit that contradicts the flat declaration of an exclusive dealer policy which is stated in the first affidavit. That one with such a sales policy would desire dealers in more than two areas of the United States, is easily understood. That the Mexican exporter wanted as its United States dealers firms that would meet its prices, is also easily understood. The majority read the statement of "policy" in the first affidavit as stating merely a temporary *modus operandi*. The word used, however, is "policy" and the second affidavit does not contradict this. A restricted dealer policy, seeking more such dealers, reconciles and gives effect to both affidavits. It also negates export value of *such* merchandise as the statutory basis of appraisement of this merchandise.

As to whether there was a single price at which *such* merchandise was offered, the majority has found that there was not a single price. I differ with the majority as to this.

The record shows that all offerings for export from Mexico to the United States were at the single price of $0.10 per pound, c.i.f. any United States port. I find no authority in section 402(d) of the Tariff Act of 1930 for deduction of ocean freight *from price* in order to arrive at export value.

The issue of whether inland freight is deductible from price has been litigated. It is not deductible in arriving at export value. *Albert Mottola* v. *United States*, 46 C.C.P.A. (Customs) 17, C.A.D. 689. The issue of whether go-down charges are deductible from price has been litigated. Such charges are not deductible from price in arriving at export value. *American Commercial, Inc.* v. *United States*, 40 Cust. Ct. 690, Reap. Dec. 9072. The provision of section 402(d) as to the right to deduct ocean freight from price in arriving at export value is not different from the provision of that section with respect to the right to deduct inland freight or go-down charges from price for the purpose of arriving at export value.

I concur with the majority that there is no export value for *such* merchandise, but for the reasons I have stated, different from theirs.

I agree that plaintiff has established export value for *similar* merchandise.

I would amend the findings of fact and conclusions of law to conform to this opinion, but I concur with the majority that the judgment below should be affirmed.