(Reap. Dec. 11119)

LUCKYTEX, LTD. *v.* UNITED STATES

Entry No. 835807.

(Decided December 29, 1965)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Herbert L. Warren, Sheila N. Ziff,* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

RAO, Chief Judge: The merchandise involved in this appeal for reappraisement consists of men's and boys' cotton sateen and corduroy pants, manufactured and shipped by the Asia Industrial Development Co., Ltd., of Hong Kong. It was appraised at the invoice unit values, net, packed, which, it is alleged by plaintiff, improperly included charges for ocean freight and insurance, as invoiced.

The parties are agreed that the appraisement was based upon the alleged price of such merchandise to all purchasers within the intendment of section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, as defined by subdivisions (f) (4)

(575)

(A) and (f) (1) (A) of said section 402, as amended. The cited subdivisions of section 402 provide the following:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(f) DEFINITIONS.—For the purposes of this section—
  (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
    (A) to all purchasers at wholesale, or

\* \* \* \* \* \* \*

  (4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States value, or constructed value, as the case may be, can be satisfactorily determined:
    (A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement.

\* \* \* \* \* \* \*

The case has been submitted for decision upon an affidavit of one Charles Pan, who describes himself as "Manager of Garment Department" of Asia Industrial Development Co., Ltd., which, together with certain attachments, was received in evidence as plaintiff's exhibit 1, and a report of James O. Holmes, acting senior customs representative in Hong Kong, dated July 12, 1962, coupled with a group of invoices, which was received in evidence as defendant's exhibit A.

In his affidavit, Mr. Pan, after setting forth the basis of his familiarity with his company's export transactions relating to wearing apparel, recited that, on October 11, 1961, his company shipped a quantity of cotton pants to Luckytex, Ltd., of New York City. Included in said shipment were 300 dozen of a style described as 3402–S, 330 dozen, style 1401, and 204 dozen, style 3402–C. The prices agreed upon for said merchandise were c.i.f. prices, and the items of marine insurance and ocean freight were as set forth on the invoice.

Mr. Pan further stated that, during 1961, his company freely offered this merchandise to all purchasers for exportation to the United States, without any restrictions, but that, during the 6 months preceding the instant shipment, the only sales to the United States of the same or

similar pants were to Luckytex, Ltd., or to the Westbound Corp. of 1140 Broadway, New York City. However, in order principally to dispose of "left-over merchandise, unsaleable to our regular United States customers," his company also sold odd-lots of assorted pants in broken styles and colors at f.o.b., Hong Kong prices, which were lower than the regular prices to Luckytex and Westbound when adjusted to an f.o.b. basis. Because of the nature of those sales, the affiant was not able to determine whether they included any of the styles sold to Luckytex or Westbound during that period. In any event, the volume involved in those sales was insignificant as compared to the volume of regular sales and, therefore, the company did not regard those sales as in the usual course of business. All other sales to the United States during 1961 were on a c.i.f. basis.

This list of sales attached to plaintiff's exhibit 1 specifies nine sales to Luckytex, Ltd., from June 20, 1961, to October 9, 1961, of several styles, in various quantities, at stated c.i.f. prices per dozen, and three sales to Westbound Corp. during April and May 1961 of a style designated as 7020, in quantities, respectively, of 1,428 dozen, 384 dozen, and 90 dozen, all at the c.i.f. price of $9 per dozen.

Except for the shipment in issue, charges for marine insurance premiums and ocean freight are not specified in connection with any of the other transactions listed in the attachment to plaintiff's exhibit 1.

Defendant's exhibit A is a report of several interviews which James O. Holmes, acting senior customs representative in Hong Kong had with Mr. Pan during the period here involved. It appears therefrom that, despite the existence of family relationships between officers of the exporter and of Luckytex and Westbound, the firms are independent and sales prices were not affected by those relationships. The merchandise is sold outright, without any restrictions or control over its ultimate disposition. Prices are negotiated with each buyer and depend on quality, workmanship, and quantities ordered; but no line is exclusive to any buyer. All sales are f.o.b. Hong Kong or c.i.f. port of destination, all charges being paid by the exporter; the inland charges are estimated, and marine insurance and ocean freight, when shown, were as actually paid.

It further appears in said report that, in connection with sales to Macy's the manufacturer charged approximately 10 per centum more for its merchandise because it regarded Macy's as a retailer, and because the styles are different, the quality and workmanship are superior, and the amount purchased is much less than the quantity of a comparable style sold to Westbound. Similar considerations account for a difference in price of styles ordered by Luckytex and by Macy's.

Apropos of the basis upon which the manufacturer fixed its prices, the report states:

In regard to the manufacturer's method of selling C.I.F. to Westbound and Luckytex Ltd. and F.O.B. to all others, Mr. Pan denied that the firm reduces its selling price by the freight charges in order that Westbound and Luckytex can make their profit in the United States. He was adamant in stating that the firm does not reduce its prices by any percentage when dealing with those two importers.

Instead of making his own analysis of sales during the period between May 1960, and June 15, 1962, for the purpose of ascertaining usual wholesale quantities, Mr. Holmes forwarded copies of the firm's invoices covering this period. For the reason that many of said invoices "do not relate to the merchandise in issue and are outside the period of exportation involved," trial counsel for the Government "selected only those invoices of Exhibit A which relate to the merchandise in issue and to the period involved," and did not offer "the complete exhibit A for that reason, as I do not wish to unduly burden the Court."

There being no objection on the part of counsel for the plaintiff to the selection thus made, defendant's exhibit A was limited accordingly. For the most part, the invoices which were retained relate to transactions between Asia Industrial Development Co., Ltd., and either Luckytex, Ltd., or the Westbound Corp. and reveal prices per dozen of particular styles, extended to show the total c.i.f. American port price. One invoice relates to a sale to the W. T. Grant Co. of $386\frac{2}{12}$ dozen men's cotton sateen walk shorts, at an f.o.b. Hong Kong price of $11.25 per dozen; one, to R. H. Macy Co., Inc., covering boys' sateen slacks, style No. 3402A, shows an ex-factory price of $11.16 per dozen, plus f.o.b. Hong Kong charges for packing, cases, and delivery.

By virtue of the provisions of 28 U.S.C., section 2633, the value returned by the appraiser is presumed to be the correct value of imported merchandise, and the burden is cast upon the party who challenges the appraiser's findings to prove that his action was erroneous and also that the claimed value is correct. Except in instances where there are elements of an appraisement which can be adopted as presumptively correct, without destroying the effect of the remainder of the appraisement, a party seeking to upset the appraiser's return must meet every material issue in the case. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 43 CCPA 136, C.A.D. 620; *S. S. Kresge Co. et al.* v. *United States*, 45 Cust. Ct. 469, Reap. Dec. 9778. Where statutory export value is in issue this requirement entails proof of the price at which such or similar merchandise is freely sold, or, in the absence of sales,

offered for sale, in the usual wholesale quantities and in the ordinary course of trade.

Seemingly, in the light of the fact that the appraised value is in each instance the equivalent of the invoice unit value, counsel for plaintiff seeks to avoid this total burden by contending that the sole issue involved in this case is whether or not the appraiser erred in failing to deduct the invoiced items for ocean freight and marine insurance in finding statutory export value of the subject merchandise. The cases of *John A Steer & Co.* v. *United States*, 30 Cust. Ct. 504, Reap. Dec. 8196, and *The John Shillito Co.* v. *United States*, 5 Treas. Dec. 555, T.D. 23851, are relied on in support of the proposition that ocean freight and marine insurance are not part of the value of imported merchandise.

It is the position of counsel for the Government that plaintiff has failed to overcome the presumption of correctness which attaches to the values found by the appraiser in that record evidence of sales is insufficient to establish the price at which such or similar merchandise was freely offered for sale to all purchasers.

While the general principle of law invoked by plaintiff has had the sanction of judicial approval over the course of the years since 1890, not only in the cited cases, but, as well, in many others, its application to the instant action is open to question. Although counsel for plaintiff asserts categorically that "the appraiser failed to deduct the invoiced items of ocean freight and marine insurance," there is not a scintilla of evidence in the instant record to establish that the appraised value was ascertained in that manner.

With an invoice before him which recited a c.i.f. price per dozen of each imported style, which price was stated to include certain enumerated exported charges, among which were marine insurance and ocean freight, the appraiser found a price per dozen equal to the c.i.f. price to be the value of each of the items here in issue. There is nothing to show, however, that the value which the appraiser adopted embraced any or all of the charges listed, or, if it did, whether such charges were included in the same amounts as those specified on the invoice. As this court had occasion to observe, in the *Kresge* case, *supra*, when considering whether or not certain inland charges, separately invoiced, formed part of the export value of imported merchandise:

Unlike the *Brechner* case [*United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71], the appraisement at bar does not show a first cost or *per se* price to which the inland charges and commission are added. It is a single unit price, f.o.b. net, packed, which, to be sure, by its very statement encompasses such charges, but whether as invoiced, or in some other amount, the return does not reveal. That a mathematical computation might tend to indicate that the appraiser

divided the number of square feet of rugs imported into the specified charges and increased the invoice unit values to that extent, does not necessarily suggest that he so acted. It may be coincidence that such results ensue, for it is equally possible that he found the charges excessive and the *per se* values inadequate, and made his computation accordingly. In view of the way the appraised value was expressed, the court may not, without proof, inquire into the methods by which it was ascertained. To challenge the item of the charges under such circumstances, is to bring into question the remainder of the appraisement and to destroy the foundation upon which it is based.

In this case, the presumption of correctness attaches to the total unit values returned by the appraiser. Although he is presumed to have ascertained those values by a proper consideration of every element composing them under the statutory definition, no presumption attaches thereto without more detailed specification. Consequently, his return is not separable into any such components as would invite the application of the *Fritzsche* [*United States* v. *Fritzsche Brothers, Inc.*, 35 CCPA 60, C.A.D. 371] rule.

Faced with an appraisement at unit prices, net, packed, plaintiff, in the instant case, did not have the privilege of isolating any portion thereof as attributable to marine insurance and ocean freight and of contending that by reason of being so designated on the invoice these amounts were not properly a part of the appraised value. It was required, instead, to prove that the appraised value was incorrect and to establish the claimed value in accordance with the statutory formula therefor.

The court does not find, in the instant record, an adequate showing in respect of either of these burdens. Although sales of such and similar merchandise over a relevant period have been proven, the prices thereof, in the usual wholesale quantities and in ordinary course of trade, have not been established. There is no evidence to support the conclusion that sales at f.o.b. Hong Kong prices were of qualities and quantities not usually sold in the regular course of business, or that R. H. Macy Co., Inc., and W. T. Grant Co. were retailers who did not purchase in usual wholesale quantities; and while it is stated that the items of marine insurance and ocean freight set forth in the invoice were amounts actually paid, it does not appear that there was such uniformity of charges specified on all of the invoices covering sales to both Luckytex and Westbound that the deduction thereof from identical c.i.f. prices for similar articles would produce a single unit price for such merchandise. Thus, for example, in the case of style No. 3402 shipped January 31, 1961, and February 6, 1961, the price is quoted as $9 per dozen, though it appears that insurance premium and ocean freight on the former average approximately $0.46 per dozen, on the latter, approximately $0.67 per dozen. To allow these two items as nondutiable elements of the value of this

style number would, in effect, result in different net values for the same merchandise exported at or about the same time. "Yet, the law does not contemplate more than one price for the same merchandise at the same time in the same market. *United States* v. *Zellerbach Paper Co.* (*Hoyt, Shepston & Sciaroni*), 28 C.C.P.A. (Customs) 303, C.A.D. 159." *John A. Steer & Co.* v. *United States, supra.* See also *The Heyman Co., Inc.* v. *United States,* 39 Cust. Ct. 707, Reap. Dec. 9033, affirmed, *United States* v. *The Heyman Co., Inc.,* 43 Cust. Ct. 619, A.R.D. 113, affirmed on other grounds, *Same* v. *Same,* 48 CCPA 13, C.A.D. 755.

In the absence of evidence to show a price other than that found by the appraiser at which such or similar merchandise was freely sold in the usual wholesale quantities and in the ordinary course of trade, the court is constrained to hold that the presumption of correctness of the appraiser's return of values for the merchandise at bar has not been overcome. The court, therefore, finds the following facts:

1. That the merchandise covered by the instant appeal for reappraisement consists of men's and boy's cotton sateen and corduroy pants, exported from Hong Kong, which were appraised at the invoice unit values, net, packed, on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. That said merchandise was entered at the invoice unit values, net, packed, less charges for marine insurance and ocean freight.

3. That whether or not charges for marine insurance and ocean freight were included in the appraised values in the amounts specified on the invoice covering the subject importation is not evident from the appraised value.

4. That the appraisement is not separable into components of *per se* values and insurance premium and ocean freight, so as to permit the application of the rule in the case of *United States* v. *Fritzsche Brothers, Inc., supra.*

5. That there is no competent evidence to show that there is any other unit price than that returned by the appraiser.

The court, therefore, concludes that:

1. The statutory presumption of correctness attaching to the appraiser's return of values for the merchandise covered by this appeal for reappraisement has not been overcome.

2. The proper basis for appraisement for the merchandise involved in this case is export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended, *supra,* and that said statutory values are as found by the appraiser.

Judgment will be rendered accordingly.