KOBE IMPORT CO. v. UNITED STATES

No. 7998.—
Entry Nos. 82746; 735887; 90526.

(Decided May 14, 1951)

*Jordan & Klingaman* (*Edward F. Jordan* and *Jacob L. Klingaman* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Guy Gilbert Ribaudo*, special attorney), for the defendant.

OLIVER, Chief Judge: These appeals involve the valuation of imitation pearls, cultured pearls, and glass spectacle lenses imported by the plaintiff between December 1940 and March 1941.

It is conceded by counsel that the appraisements herein were made on the basis of export value, as provided in section 402 (d), Tariff Act of 1930, and that export value is the proper basis for valuation. The plaintiff contends that such values should be based on export values from China, and that the invoice unit prices properly reflect such values and that the item of commission appearing on the invoices is a *bona fide* buying commission and therefore not properly part of the export values. The defendant contends that the merchandise was purchased in and exported from Japan; that when the merchandise left Japan it was destined for the United States; that it was sent to China and transshipped to the United States and should be valued at its export values in Japan.

One of the partners of the Kobe Import Co. of New York, plaintiff herein, Louis Josephson, testified that during the involved period he was in Shanghai representing his firm; that he purchased all of this merchandise from Maru & Co. of that city, who was a dealer in general merchandise in Shanghai selling at wholesale and retail; that he purchased from stock in the ordinary wholesale quantities and received no special prices; that the relationship between his firm and Maru & Co. was that of buyer and seller, neither having any financial interest in the other; that Shanghai was the principal market in China for this type of merchandise; that Maru & Co. was a Japanese concern that imported from Japan and resold in China; that purchases were made after examining samples and inspecting the merchandise in the "go-down" or warehouse of Maru & Co. in Shanghai; that C. Y. Chen, proprietor of Eastern Undies Co. of Shanghai, represented him as a commissionaire and shipping agent in these transactions, for which he [Chen] was paid a commission of 5 per centum; that the invoice unit prices represent the selling prices of Maru & Co., but that the payments of the total amounts shown on the invoices, including charges and commission, were made to Chen, who in turn paid Maru & Co. the invoice unit amounts; that there was a market for this merchandise for home consumption in China and the prices for home consumption in China were no different than those for exportation to the United States. The cross-examination of this witness failed to weaken his direct testimony, the pertinent points of which were confirmed by the affidavit of Chen (exhibit 2).

The defendant called one of the examiners who examined part of these importations, and stipulated if the other two examiners were called they would give similar testimony and that the appraiser adopted the reports of value made by the examiners. This witness testified that the appraisements here were based on the export values

of similar merchandise exported by a shipper in Japan; that he did not know if there were any other shipments of this type of merchandise from China to the United States; that the goods appeared to be Japanese merchandise and were marked "Made in Japan," and the shipping cases did not show indications of having been repacked but appeared to be in original form.

The Treasury representative's report (exhibit 5) infers that the merchandise was purchased in Japan by Louis Josephson and shipped from Japan to Maru & Co. in Shanghai, destined for transshipment to the United States, but there is no specific evidence of that fact in the record. This exhibit also states that Maru & Co. "is located in the Japanese controlled area of Shanghai and investigations there are difficult to make."

There is no evidence in this record which would justify the conclusion that the United States was the ultimate destination of the goods at the time of shipment from Japan to China. It appears that the merchandise entered into the commerce of China and was placed in a "go-down" in that country from whence it was offered for sale by sample and sold after inspection by the purchaser at the "go-down." Also, there was a market for this merchandise for consumption in China (cf. *United States* v. *Meadows, Wye & Co. (Inc.)*, 49 Treas. Dec. 959, T. D. 41622).

I find that the merchandise is an exportation from China and the use of export values of merchandise in one country as a basis of the valuation of similar merchandise from another country is, of course, a clear violation of the statute. Therefore, the appraisement here is based on a wrong premise.

The record is not satisfactory in all respects, but considering that the appraisement was based on a wrong premise and also that the Customs Administrative Act of 1938 requires a finding of value by this court, being mindful of the fact that counsel have agreed that export value is the proper basis of valuation, it becomes necessary to determine the export value from China for this merchandise from the evidence of record. The evidence of the export value of this merchandise in China consists of the testimony of Louis Josephson and the affidavit of the commissionaire Chen.

On the basis of this record, I find the following facts:

1. The merchandise consists of imitation pearls, cultured pearls, and glass spectacle lenses which originated in Japan; were transmitted to China; and then purchased in China for exportation to the United States.

2. The merchandise was appraised on the basis of its export value in Japan.

3. The purchaser utilized the services of a commissionaire and shipping agent in these transactions, for which services he paid a commission of 5 per centum.

I therefore conclude as matter of law:

1. That this merchandise entered into the commerce of the country of China, where it was purchased for exportation to the United States.

2. That the proper basis of valuation thereof is export value.

3. That an appraisement on the basis of an export value in Japan for merchandise exported from China is based on a wrong premise.

4. That the proper export value is such value in China.

5. That the item of 5 per centum commission appearing on the invoices is a *bona fide* buying commission paid to a commissionaire for services performed for the purchaser, and is not a part of the export value.

6. That the proper export values, as such value is defined in section 402 (d) of the Tariff Act of 1930, are the invoice unit prices.

Judgment will be rendered accordingly.