(A. R. D. 60)

UNITED STATES *v.* KOBE IMPORT CO.

Entry Nos. 82746; 735887; 90526.

Second Division, Appellate Term

(Decided June 8, 1955)

*Warren E. Burger,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the appellant.

*Jordan & Klingaman* (*Edward F. Jordan* and *Jacob L. Klingaman* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges; RAO, J., not participating

FORD, Judge: This is an application for review filed under the provisions of title 28 U. S. C., section 2636 (a), and seeks a reversal

of the decision and judgment of the trial court reported in *Kobe Import Co. v. United States*, 26 Cust. Ct. 678, Reap. Dec. 7998, covering the appeals listed in schedule "A," hereto attached and made a part hereof. The merchandise which forms the subject of this application for review consists of imitation pearls, imitation pearl beads, cultured pearls, and glass spectacle lenses. The merchandise was invoiced at various prices in Chinese national dollars, entered as invoiced, and appraised at values higher than the entered values as to the merchandise covered by appeal Nos. 154102–A and 154108–A. All of the merchandise covered by appeal No. 154107–A consists of imitation pearl beads, which were entered at 0.95 per set Chinese national dollars and appraised at 63 Japanese yen per gross strands, packed.

The appraisements in these three appeals were based on the export value in Japan, the appraiser determining that the merchandise was exported from Japan. The appellant contends that the merchandise was purchased in and exported from Japan; that when the merchandise left Japan it was destined for the United States; that it was sent to China and transshipped to the United States; and that it should be valued at its export value in Japan. The appellee contends that the values of this merchandise should be based on export values from China; that the invoice unit prices properly reflect such values; and that the item of commission appearing on the invoices is a *bona fide* buying commission and is, therefore, not any part of the export values.

In disposing of these appeals, the trial court held as follows:

I find that the merchandise is an exportation from China and the use of export values of merchandise in one country as a basis of the valuation of similar merchandise from another country is, of course, a clear violation of the statute. Therefore, the appraisement here is based on a wrong premise.

The record is not satisfactory in all respects, but considering that the appraisement was based on a wrong premise and also that the Customs Administrative Act of 1938 requires a finding of value by this court, being mindful of the fact that counsel have agreed that export value is the proper basis of valuation, it becomes necessary to determine the export value from China for this merchandise from the evidence of record. The evidence of the export value of this merchandise in China consists of the testimony of Louis Josephson and the affidavit of the commissionaire Chen.

 *  *  *  *  *  *  *

* * * That the proper export values, as such value is defined in section 402 (d) of the Tariff Act of 1930, are the invoice unit prices.

The appellee's witness, Louis Josephson, testified at the trial of this case that he was in Shanghai, China, from 1938 to 1945, which covers the period of these importations; that he purchased the involved merchandise with the assistance of "our representative in Shanghai," C. Y. Chen; that he does not speak Chinese and that Chen "* * * was acting as our commissionaire, our commission agent for China

for the purchase of merchandise to be shipped to the United States or elsewhere"; that Maru & Co. "* * * came to us first and asked us to buy, and whatever we want, he would sell us, and so, I said, 'If you get something, come up here and make us a written offer and show it to Mr. Chen who will show it to me, show me your written offer and then I will agree to examine the merchandise in your go-down and purchase the goods from you.'"

This witness further testified that in no case did Maru & Co. give him a better price than it gave to other purchasers; that "If I didn't want a lot of goods, he used to sell it to somebody else"; that, for the services rendered by Chen in the procurement of this merchandise and in checking, packing, and exporting the same, he paid to the said Chen a commission of 5 per centum.

In view of the contentions made by counsel for appellant that the affidavit of C. Y. Chen, exhibit 2, was not entitled to any considera-tion or weight, for ready reference, we quote the same in full, omitting only the heading, jurat, and a schedule attached:

1. That he speaks and understands the English language, that he is a resident of Shanghai, China, and since October 1st 1940 up to August 18th 1941, has been engaged in business in that city as a buying and shipping agent and also as a manufacturer of silk lingerie, and that he has conducted both business under the name of the The Eastern Undies Co.

2. That in his capacity as a buying and shipping agent throughout the afore-said period including the years 1940 and 1941 up to the outbreak of the war between Japan and the United States he attended to the purchase and shipping of various articles of merchandise including glass lenses, chatons, imitation pearls and cultivated pearls for buyers for export to the United States and elsewhere and for domestic consumption or use in China; and that, as a necessary part of his business, he was familiar throughout the aforesaid period with wholesale market conditions in Shanghai,. China, including prices at which the aforesaid kinds of merchandise were being quoted and offered for sale and the range of quantities in which they were ordinarily sold.

3. That he is personally familiar with the facts as to the purchase and ship-ment of the shipments enumerated in the annexed schedule, from Shanghai to Kobe Import Co. of New York, N. Y., U. S. A., including those invoiced by Kobe Import Co. of Shanghai, China, except that the court numbers are stated on information and belief.

4. That the merchandise covered by the abovementioned shipments was purchased by Mr. Louis Josephson of the aforesaid Kobe Import Co. of New York and Shanghai, that your affiant was present when the said purchases were made, that your affiant personally attended to the shipping of the said merchan-dise from Shanghai to New York, and that Shanghai is the principal market in China for these classes of merchandise.

5. That the said merchandise was purchased in Chinese National dollars at the prices stated on the invoices forwarded to the United States in connection with the shipments, that payment was actually made in that currency, and that there was no written agreement or oral understanding between the buyer and seller as to the rate of exchange at which the said Chinese National dollars were to be purchased, the buyer being free to purchase his exchange at the best available rate.

6. That the aforesaid purchases were in each instance made under open market conditions and without any special arrangement as to price between the buyer and the seller and without any special consideration being given to the buyer.

7. That the prices at which the said merchandise was purchased were the prices on or about the above-mentioned dates of exportation at which the above-mentioned sellers and others in the Shanghai market were freely offering to sell such and similar merchandise to all purchasers in the usual wholesale quantities and in the ordinary course of trade for export to the United States and for home consumption in China, and that the quantities covered by the above-mentioned purchases were the usual or ordinary wholesale quantities of such or similar merchandise being offered for sale and sold in Shanghai at or about said dates of exportation for export to the United States and for home consumption in China.

8. That, at the time of the sales of the involved merchandise, Cathay Optical Co., Siang Jin Co., Siang Jin Co., Siang Jin Optical Co., Tse Knau Co., Sin Sung Optical Co., Tse Kwang Optical Co., International Optical Co., Sing Jin Optical Co., Sing Sun Optical Co. and Asia Optical Co., who appear as sellers in the annexed schedule, were manufacturers of lenses in Shanghai, China, that China Supply Co., Chin Hisu Chai, Chin Sin Chai Co. and Wang Chin Sin Chai Co. also named as sellers in said schedule, were wholesale dealers in lenses, imitation pearls and cultivated pearls in Shanghai.

9. That the owner of Maru & Co. was at that time and is now a citizen of Japan and that he has liquidated his business and returned to Japan.

That (Mr. Louis S. Josephson) are no longer in business in Shanghai and to the best of your affiant's belief no individual of the said companies is now available in Shanghai.

10. That neither your affiant nor anyone associated with him has any financial or other interest in the business of Kobe Import Co. of New York, or Kobe Import Co. of Shanghai and that no one associated with those firms has any interest in his business.

11. That to the best of your affiant's knowledge and belief no one of the aforesaid sellers nor anyone associated with them has or had any financial or other interest in the business of the said Kobe Import Co. of New York, or the Kobe Import Co. of Shanghai, nor has or had either of the said companies or anyone associated with them any interest in the businesses of the aforesaid sellers.

This record makes it clear that while the merchandise involved in this application for review originated in Japan, it was not exported to the United States from Japan, but had been shipped from Japan to Shanghai, China, and had entered into the commerce of China prior to its exportation to the United States. Therefore, the involved merchandise was not exportations from Japan but exportations from China.

The record fully supports the finding of the trial court that:

There is no evidence in this record which would justify the conclusion that the United States was the ultimate destination of the goods at the time of shipment from Japan to China. It appears that the merchandise entered into the commerce of China and was placed in a "go-down" in that country from whence it was offered for sale by sample and sold after inspection by the purchaser at the "go-down." Also, there was a market for this merchandise for consumption in China. (cf. *United States* v. *Meadows, Wye & Co.* (*Inc.*) 49 Treas. Dec. 959, T. D. 41622).

Since the appraiser based his values for the instant merchandise upon the value of such or similar merchandise exported from Japan, and the involved merchandise not being an exportation from Japan but from China, such action on the part of the appraiser was clearly in violation of the statute. Consequently, no presumption of correctness attaches to the action of the appraiser in finding the values complained of for the instant merchandise.

However, in addition to showing that the action of the appraiser was erroneous, it was the burden of the importer to also establish some other dutiable value as the proper one. As stated by the Court of Customs and Patent Appeals in *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495:

* * * To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect. *United States* v. *Gane and Ingram, Inc.*, 24 C. C. P. A. (Customs) 1, T. D. 48264, citing *United States* v. *T. D. Downing Co. (George H. Sweetnam, Inc.)*, 20 C. C. P. A. (Customs) 251, T. D. 46057. It is clear, from a reading of section 402 (c) and (d), *supra*, that in order to prove foreign value or export value as a basis for a valid reappraisement, *the appellant must establish, inter alia, the usual wholesale quantities* in which such or similar merchandise involved was freely offered for sale to all purchasers in the principal markets of the country from which exported, etc. This court has so construed the statute in the case of *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341, wherein we held that failure to satisfactorily establish the usual wholesale quantities constitutes a failure to establish one of the essential elements of a valid appraisement. If appellant has failed to establish the usual wholesale quantities, then, in accordance with the foregoing, it seems clear that he has failed to meet his burden of proof, and the valuation set by the appraiser must stand.

Under the rule laid down in the *Brooks Paper Company* case, *supra*, the statements in the affidavit of C. Y. Chen, exhibit 2 herein, heretofore quoted, regarding usual wholesale quantities, are mere conclusions on the part of the said Chen, and are, therefore, not sufficient to establish the usual wholesale quantities in which the involved merchandise is bought and sold in the ordinary course of trade in China. The only other evidence in this case as to the proper values of this merchandise is the testimony of Louis Josephson that the prices shown on the invoices are the prices actually paid therefor.

Based upon this record, and following the pronouncements in the *Brooks Paper Company* case, *supra*, we must hold that the importer herein has failed to establish one of the material issues in this case, to wit, the usual wholesale quantity in which such or similar merchandise to that here involved was freely offered for sale to all purchasers in the principal markets of China. Since appellee has failed to establish the usual wholesale quantity, then, in accordance with the foregoing, it seems clear that it has failed to meet its burden of

proof, and the valuation set by the appraiser must stand, even though it is established by this record that said appraisement was erroneous.

In the case of *United States* v. *Philipp Wirth et al.*, 20 C. C. P. A. (Customs) 94, T. D. 45705, the Court of Customs and Patent Appeals held as follows:

We must hold, therefore, that there is no substantial evidence of record to establish a foreign value of the merchandise. It was held by the court below, and conceded by counsel for the parties, that the merchandise had no export value. Accordingly, the dutiable value of the merchandise is its United States value, if that can be ascertained. If not, then the cost of production. Section 402 (a).

In view of the fact that the parties and the court below have proceeded upon the theory that there was a foreign value, and as there is no evidence of record of the United States value, nor of the cost of production, as defined by law, we are of opinion that, in order that the parties may have an opportunity to present evidence of such value or cost of production as the facts may warrant, a new trial should be had.

In commenting upon the above decision in the case of *G. & H. Transport Co., Inc.* (*Philipp Wirth*) v. *United States*, 27 C. C. P. A. (Customs) 159, C. A. D. 78, the Court of Customs and Patent Appeals said:

Appellant contends that this court decided in the first *Wirth* case, *supra*, that the value used by the collector was not a lawful value. This contention is a misapprehension of what the opinion holds. In that case we held that there was no "substantial evidence of record to establish a foreign value of the merchandise."

This holding did not render the original appraisement void. The most that can be said of our holding in that case in this respect is that on the record before us an erroneous basis of arriving at the value of the merchandise was used by the trial court. The value had been ascertained on the wrong theory. This does not render the appraisement null and void.

     *       *       *       *       *       *       *

Appellant had the burden of proving not only that the value found by the appraiser was erroneous but also of proving the correct dutiable value. It proved only that the basis of value found by the appraiser was erroneous but did not prove the correct dutiable value. Therefore, his appeals were properly dismissed and the collector in adopting the original appraised value properly followed the statute.

It will be seen from the foregoing that the Court of Customs and Patent Appeals permitted an appraised value to stand as the final appraised value of the merchandise, even though it had been established that such appraised value was erroneous.

In view of the conclusion we have reached and the state of this record, it is not necessary for us to give further consideration to the 5 per centum which was paid by the appellee herein to C. Y. Chen as a buying commission.

Since we find it necessary to modify the judgment of the trial court, it is only fair to state that its decision herein was rendered prior to the promulgation of the *Brooks Paper Company* decision, *supra*.

Based upon this record, we find as facts:

1. That the involved merchandise consists of imitation pearls, imitation pearl beads, cultured pearls, and glass spectacle lenses which originated in Japan, were imported into China, and then purchased in China for exportation to the United States.

2. That the merchandise was appraised on the basis of export value in Japan.

3. That the only evidence of export value for the involved merchandise is the testimony of Louis Josephson that he actually paid the prices shown on the invoices, and the affidavit of C. Y. Chen.

We, therefore, conclude as matter of law:

1. That the involved merchandise entered into the commerce of China, where it was purchased for exportation to the United States.

2. That the proper basis of valuation of the involved merchandise is export value.

3. That the appraisement of the involved merchandise, based upon the value of such or similar merchandise exported from Japan, and the involved merchandise being an exportation from China, was clearly in violation of the statute, and no presumption of correctness attaches to such action by the appraiser.

4. That the testimony of Louis Josephson, together with the conclusory statements contained in exhibit 2, is not sufficient to establish any value for the involved merchandise.

5. That, in view of the state of this record, the export values which must be accepted as the values of the involved merchandise are those returned by the appraiser.

The judgment of the trial court that the proper export values for the involved merchandise are the invoice unit prices is, accordingly, reversed. Judgment will be rendered accordingly.