(Reap. Dec. 10595)

HAMERS COMPANY *v.* UNITED STATES

Entry No. 815288, etc.

(Decided October 9, 1963)

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *Eugene F. Blauvelt* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

OLIVER, Chief Judge: These four appeals for reappraisement, which were consolidated when called for trial, relate to certain stained glass windows, exported from Holland between May 16, 1953, and December 5, 1953, by Adr. Hamers-Export Tilburg and entered at the port of New York by Hamers Company, plaintiff herein. The merchandise was entered on the basis of foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (T.D. 49646), as stated in plaintiff's brief, "at a home market price of more than $15. per square foot." Statutory foreign value, as it is involved herein, is defined as follows:

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which ex-

ported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The stained glass windows in question were appraised at $5.25 per square foot, on the basis of cost of production, as defined in section 402(f) of the Tariff Act of 1930, as follows:

Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Plaintiff's principal claim is for statutory foreign value at prices, ranging from $15.25 per square foot to $18 per square foot. The alternative claim is set forth in counsel's brief as follows:

In the event the Court finds that the record does not support importer's claim for appraisement on the basis of foreign value then, in the alternative, importer claims for appraisement on the basis of cost of production based upon the actual production costs of each of the windows in question plus additions of the statutory minimums for overhead and profit as established by competent evidence in the form of affidavits and in the form of oral testimony given at the trial. In each instance, the cost of production figures exceed $15. per square foot.

It will be observed that the claimed values, either foreign value or cost of production, are higher than the value found by the appraiser. Plaintiff has assumed this rather unusual position with the view of bringing about free entry of the present merchandise under paragraph 1810 of the Tariff Act of 1930, which provides that stained glass windows are exempt from duty if they are "valued at $15 or more per square foot."

Plaintiff introduced oral testimony and documentary proof. Defendant offered no evidence because, as stated by counsel at the con-

clusion of the trial, "the Government is of the belief that the importer has failed to make out a prima facie case."

Adrian Hamers, president of Adrian Hamers, Inc., successor to Hamers Company, plaintiff herein, offered oral testimony. The witness stated that he is an artist and silversmith and that he designs and plans interiors for chapels and churches. His testimony shows that, of the stained glass windows involved herein, 10 were installed at St. Michael's Monastery in Union City, N.J., and the remainder in the Church of Our Lady of Holy Angels in Singac, N.J. Referring to the services he performed in connection with the manufacture, importation, and installation of all of the windows in question, the witness testified that, prior to placing the orders therefor, he had several conferences with the authorities at the monastery in Union City and the church in Singac, and that he then prepared preliminary plans and sketches which he sent to Holland, where artists worked out finished drawings which were sent to plaintiff for approval. Following further discussions between the witness and interested parties at the monastery and the church, the "shop drawings," as finally approved, were returned to Holland for use in the manufacture of the windows in question. The witness' testimony relating to the work he did, the time he consumed, and the value of the services, in connection with the importation and installation of these stained glass windows, is so vague and indefinite, it contributes nothing essential toward establishing a value claimed by plaintiff.

An affidavit (plaintiff's exhibit 2), executed by the manager of Adr. Hamers-Export of Tilburg, Holland, the foreign exporter of the merchandise in question, discloses that the said exporter is wholly owned by Hamers Company of New York, plaintiff herein. It appears therefrom that a course of business, followed in connection with the purchase, sale, and exportation of the present merchandise, was developed between the two companies, whereby Hamers of New York arranged for the purchase in the United States of stained glass windows and Hamers of Tilburg negotiated with artists and manufacturers in Holland for the sale of the windows. Hamers of New York supplied preliminary sketches, from which artists in Holland prepared workshop plans, showing actual size and complete designs of the windows that were photographed on specially treated film which was sent to the prospective purchaser in the United States, for approval, and, upon acceptance, returned to Holland for use in the manufacture of the windows. Hamers of Tilburg handled all details connected with the shipping and exportation of the merchandise.

The manager of Hamers of Tilburg, in his affidavit (exhibit 2, *supra*), testifies that, at the time of exportation of the stained glass windows in question, he was "in complete charge of the office and in-

timately acquainted with all of its operations." Six sales, "which were filled by Adm. Hamers-Export of Tilburg," are listed as follows:

| Date | Church | Area of stained glass | Artist | Amount received |
|------|--------|------------------------|--------|------------------|
| 2/12/53 | Church of St. Sebastian Kingwood, West Virginia | 129.00 sq. ft. | Clysen | $1,200.00 |
| 3/7/53 | St. Michael's Monastery Union City, New Jersey | 645.84 sq. ft. | Clysen | 3,947.36 |
| 8/25/53 | St. Marks E. L. Church Freemont, Ohio | 8.90 sq. ft. | Clysen | 84.21 |
| 8/25/53 | Our Lady of the Holy Angels Singac, New Jersey | 113.75 sq. ft. | Slypen | 905.00 |
| 9/ /55 | Church of St. Bede Syosset, Long Island, New York | 13.50 sq. ft. | Slypen | 155.00 |
| 9/26/55 | St. Paul's Church Ivy, West Virginia | 120.00 sq. ft. | Slypen | 1,208.50 |

The "amount received," set forth in the foregoing tabulation, appears in affidavits (plaintiff's exhibits 4 and 5), executed by the artists, each of whom testifies that he executed the jobs for, and received payment from, Hamers of Tilburg. Explaining certain costs incurred by Hamers of Tilburg in connection with the above-enumerated sales, the manager therefor testified as follows (exhibit 2, *supra*):

I have checked my records and the books of account, and I find that the weighted average cost of designing these windows including developing of the film method for presentation of stained glass window sketches amounted to 23.95 per cent of the amounts paid to the artists. The weighted average of the cost of my time (at $8 per day) in conferring with the artists and taking care of all of the details from the placing of the order to the shipment of the windows was 13.20 per cent of the amounts paid to the artists. The weighted average of the actual expenses for travel, phones, stamps, blue prints, photostats and the like was 5.28 per cent of the amounts paid to the artists. The total cost of all of the expenses of this office was a weighted average of 42.43 per cent of the amounts paid to the artists.

It will be observed that, in each of the above-enumerated sales, the price per square foot is lower than the value sought by plaintiff. Although no specific reason is given for the variation in prices, explanation therefor may be accepted from the following testimony of the manager of Hamers of Tilburg (exhibit 2, *supra*):

* * * Stained glass windows must not only be produced in designs that are pleasing to, and in conformance with the purchaser's ideas, but they must be made to precise dimensions in order to fit into a particular window space of a church.

Testifying further with respect to the business of Hamers of Tilburg, the manager states that sales were not limited "to clients of the Hamers Co." and that "comparable stained glass windows" were freely offered for exportation to Canada and to the Netherlands West Indies. Refer-

ence is made to two sales covering exportation of stained glass windows to schools in Curacao, Netherlands West Indies. Details thereof are set forth in the affidavit (plaintiff's exhibit 2), as follows:

* * * One of the sales was of two windows for the Roman Catholic High School at Cascoraweg, Curacao, at a price of $186 (fl.706.10) per square meter which is equivalent to $17.28 per square foot. The other sale of five stained glass windows for the Openbare H.B.S. (Public High School) in Curacao was at a price of $195.55 (fl.743.85) per square meter or $18.17 per square foot. These prices included a 10 per cent commission for Witcom so that the net prices we received were $15.55 and $16.35 per square foot respectively. Copies of these orders and of our invoices together with translations into the English language are attached hereto. * * * The higher price for the five windows reflects the additional cost of more complicated designs, but these prices represent the range of prices at which we were then offering stained glass windows of the same general class to anyone who wished to purchase them in the ordinary course of our business. Tilburg was one of the principal markets of Holland for the sale of stained glass, and the price did not depend in any way on whether the purchase was for ten square feet or many hundreds of square feet.

Examination of the orders and invoices referred to in the foregoing quotation discloses that they show only aggregate amounts, without any mention of detail costs referred to in the affidavit.

Another affidavit (plaintiff's exhibit 3) was executed by the president of Atelier Flos of Steyl-Tegelen, Holland, a manufacturer of stained glass windows. The witness states that he "produced a large number of stained glass windows for use in Holland, the United States, Canada and other countries." His testimony, however, refers to transactions that followed the procedure connected with the relationship between Hamers of Tilburg and Hamers of New York, as hereinabove outlined. The witness classifies stained glass windows into two categories. One quality is "factory-made stuff," which is cheaper than the other class or type that is made "with the help of a real artist." Referring to the artists who worked on the present merchandise, the witness states as follows:

* * * I have seen photographs of the designs made by Mr. Clysen and Mr. Slypen, and if they had been willing to execute these windows at our studios, I could not and would not have charged less than $15.25 to $18.00 per square foot for these windows at any time from 1951 to 1958. These prices represent those at which my company was offering and selling comparable windows to anyone who wished to purchase them. I have attached 2 invoices covering sales of comparable windows that I made during that time.

The invoices referred to by the witness are in a foreign language, without any translation thereof.

In its argument, urging a foreign market value for the stained glass windows in question, plaintiff admits that it has been unable to establish sales for home consumption in the principal market of the country of exportation, but contends, as stated in counsel's brief, that the "uncontradicted evidence establishes that throughout the year 1953" simi-

lar stained glass windows "of the same quality and of similar design" were freely offered by "Adr. Hamers-Export of Tilburg as well as Atelier Flos of Steyl-Tegelen."

Whether or not imported merchandise is similar, for tariff purposes, with a comparable product sold, or offered for sale, for home consumption in the foreign market, involves consideration of many different elements of sameness that may exist between two commodities. In *United States* v. *Kraft Phenix Cheese Corp. et al.*, 26 CCPA 224, C.A.D. 21, the difference in treatment in the course of processing two qualities of cheese—even though used for the same purpose—was sufficient to hold that the comparable products were dissimilar for tariff purposes. In *Scharf Bros. Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 347, T.D. 43089, two kinds of rock candy were held to be similar upon finding that the chemical composition of both was identical, that both were used for the same purpose, made by the exact method, and of approximately the same value. In *United States* v. *F. Vietor & Achelis*, 17 CCPA 412, T.D. 43864, a difference in value, approximately 20 per centum, between two types of ribbons, was the basis for holding that the articles were not similar.

Testimony herein, by plaintiff's witnesses, that stained glass windows are made to conform to a purchaser's ideas and in precise dimensions to suit the place of installation and that prices vary according to complexities of designs, carries admissions that suggest the necessity of competent proof, in line with the pronouncements in the cited authorities, to invoke the doctrine of similarity, favorable to plantiff's contention. Such required proof is not supplied by the statements of plaintiff's witnesses, as they appear herein, that they were offering, or willing to sell, or selling, "comparable windows" or "windows of the same general class," which are merely generalities that lack specific details, upon which the question of similarity must be determined. The record herein is not sufficient to establish, for the present merchandise, foreign value, as defined in section 402(c), as amended, *supra*.

In its alternative claim for appraisement of the present merchandise on the basis of cost of production, section 402(f), *supra*, plaintiff contends that consideration should be given to the cost of services performed in the United States, "in making measurements, sketches, and meeting the design ideas of the purchaser," and cites, in support thereof, *Ford Motor Company* v. *United States*, 29 Cust. Ct. 553, A.R.D. 9. That case involved the statutory cost of production of certain rough iron castings. The specific issue therein related to the cost of certain pattern equipment that had been manufactured in the United States and used in Canada in the production of the imported castings. The court found that the use of the pattern equipment was essential to the ultimate manufacture of the castings and, therefore, held that the

cost of such equipment was within the class of items contemplated under the provisions of section 402(f)(1), *supra*. While the plans and sketches prepared by Hamers of New York, like the pattern equipment involved in the *Ford* case, *supra*, were essential in the manufacture of the imported merchandise, the record herein precludes a conclusion, consistent with that reached in the cited case. In the *Ford* case, there was an agreement between the parties as to the cost of the disputed item. In this case, there is no such agreement and plaintiff's testimony is so indefinite that actual costs cannot be determined. There is also deficiency in the testimony of the manager of Hamers of Tilburg, giving the "weighted average" of various items of expenses. Such testimony lacks the degree of clearness and accuracy that is necessary to make positive findings of the costs entering into statutory cost of production.

Cost of production, as a basis for appraisement of imported merchandise, must be based on actual costs, and not estimates or approximations. *Zigmund Loew* v. *United States*, 2 Cust. Ct. 861, Reap. Dec. 4529; *United States* v. *International Graphite & Electrode Corp.*, 25 CCPA 74, T.D. 49066. That the *International Graphite & Electrode Corp.* case involved statutory United States value and not cost of production, the subject of the present discussion, is of no importance herein. The statutory language, defining each of the said bases of appraisement, is sufficiently comparable to apply in this case the reasoning, concerning average prices, invoked in that case. The evidence before me does not support plaintiff's contention, relating to statutory cost of production.

Plaintiff's complaint that the Government made no attempt to defend the appraised value and offered no evidence in support thereof is answered in *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593, wherein our appellate court stated as follows:

* * * There is a statutory presumption that the value found by the appraiser is correct. The burden upon a party attacking an appraised value is two-fold, i.e., to prove the action of the appraiser erroneous, and to establish some other dutiable value as the proper one. In other words, it is not incumbent upon the Government to prove that the appraised value is proper, until or unless the importer shows such appraisement to be erroneous and establishes a different value in place thereof. *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495, and *Kenneth Kittleson* v. *United States*, 40 C.C.P.A. (Customs) 85, C.A.D. 502, and cases cited therein.

On the basis of the present record and for all of the reasons hereinabove set forth, plaintiff has failed to sustain its twofold burden, as set forth in the *Kobe Import Co.* case, *supra*.

Consideration has been given to all of the cases cited in the briefs filed by counsel for the respective parties. Reference herein has been made only to those cases considered necessary to support the reasoning followed and the conclusions reached.

I find as matter of fact:

1. That the merchandise in question consists of stained glass windows, exported from Holland between May 16, 1953, and December 5, 1953, by Adr. Hamers-Export Tilburg and entered at the port of New York by Hamers Company of New York.

2. That appraisement thereof was made on the basis of cost of production, as defined in section 402(f) of the Tariff Act of 1930.

3. That stained glass windows, such as or similar to those involved herein, were not freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported at the time of exportation of the present merchandise.

4. That the record herein does not show a statutory cost of production different from the amount found by the appraiser.

I conclude as matter of law:

1. That there is no foreign value, as such value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (T.D. 49646), for the stained glass windows in question.

2. That the proper basis for appraisement of the present merchandise is cost of production, as defined in section 402(f) of the Tariff Act of 1930.

3. That the appraised value thereof carries a presumption of correctness that has not been overcome by the evidence adduced herein.

4. That the statutory cost of production of the stained glass windows involved herein is $5.25 per square foot, as found by the appraiser.

Judgment will be rendered accordingly.