(R.D. 11511)

LUCKYTEX, LTD. v. UNITED STATES

Entry Nos. 1156 (Baltimore), etc.

(Decided April 15, 1968)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

WILSON, Judge: This case involves 102 separate appeals for reappraisement, all of which were consolidated for purposes of trial. The imported merchandise consists of various items of cotton wearing apparel worn by either men, women, or children.

These goods were exported from Hong Kong by Asia Industrial Development Co., Ltd., between December 20, 1960, and October 16, 1962. That firm merged into the Textile Alliance, Ltd., of Hong Kong on July 1, 1962 (R.81).

Entry was made in each appeal at the invoiced unit c.i.f. price, *less* the *included* separately stated total charges for ocean freight and insurance.

Typical of most of the appraisements in each entry is: "Appr'd @ Invoiced unit, net pkd." This of course means "appraised at invoiced

unit, net packed." The unit value is shown to be either c.i.f. Baltimore or c.i.f. New York and includes the invoiced charges for ocean freight and insurance. Other appraisements are indicated at *specific* values, net packed, which are equal to the invoiced unit values, which values also include the invoiced charges, *supra*, c.i.f. Baltimore or c.i.f. New York.

Counsel agree that export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the proper basis for determining the value of the imported merchandise.

The plaintiff contends that such export value is represented by the alleged f.o.b. prices testified to by its witness Charles T. Y. Pan. The prices for the various imported articles are set forth in appendix "A" attached to plaintiff's brief herein. The plaintiff also asserts that "it appears obvious that each and every garment covered by the appeals herein was appraised at c.i.f. values, and that the appraiser failed to make allowance for the ocean freight and marine insurance," and that such "failure to allow ocean freight and marine insurance as non-dutiable items is totally at variance with the law as it has been uniformly construed since the enactment of the Customs Administrative Act of 1890." In support of this contention, the plaintiff cites the following cases: *John A. Steer & Co.* v. *United States*, 30 Cust. Ct. 504, Reap. Dec. 8196, and *The Heyman Co., Inc.* v. *United States*, 39 Cust. Ct. 707, Reap. Dec. 9033, affirmed, *United States* v. *The Heyman Co., Inc.*, 43 Cust. Ct. 619, A.R.D. 113, affirmed on other grounds, *Same* v. *Same*, 48 CCPA 13, C.A.D. 755.

The defendant contends that based on export value the invoiced unit price, net packed, correctly indicates the f.o.b. value which is "represented on the invoices at the C.I.F. value in each case." The statement by defendant's counsel to that effect (R. 6, 7) and in its brief, page 1, is *not* supported by any evidence introduced by the defendant. The trial judge correctly stated (R. 7) that statements of counsel are not evidence.

The amended statute under consideration, *supra*, is as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Other portions of the amended statute are:

    (f)  Definitions.—For the purposes of this section—
       (1)  The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
          (A)  to all purchasers at wholesale, or
          (B)  in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.
       (2)  The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

In its brief, page 1, plaintiff asserts that "This case is essentially a retrial of *Luckytex Limited* v. *United States* [56 Cust. Ct. 575], Reap. Dec. 11119," which record was incorporated herein without objection by defendant.

The plaintiff's evidence consists of the oral testimony of Philip J. C. Tang and Charles T. Y. Pan, a number of invoices (plaintiff's collective exhibit 1), and an affidavit by one Cyril Leslie Coldham Blott (exhibit 2), sworn to on November 23, 1966. The defendant introduced a number of "Purchase Order[s]" identified by Mr. Pan. These were placed by plaintiff with the exporter herein between April 14, 1960, and February 16, 1962 (defendant's collective exhibit A). A report dated June 13, 1963, by a senior customs representative in Hong Kong (marked exhibit B) is also in evidence.

The merchandise in the incorporated case, Reap. Dec. 11119, *supra*, was shipped to plaintiff by the exporter hereinabove mentioned on October 11, 1961, which is within the export period here involved. Appraisement in that case was made at the invoice unit values, net packed, as in the case at bar. The plaintiff there alleged, as is here also claimed, that the appraiser improperly included charges for ocean freight and insurance, as invoiced. The evidence in that case consisted of an affidavit of Charles Pan, the same person who testified in the instant case (plaintiff's collective exhibit 1), and a report by an acting senior customs representative in Hong Kong, dated July 12, 1962. Also in evidence was a group of invoices (defendant's collective exhibit A).

The court in the incorporated case held that where export value is in issue plaintiff is required to prove a price at which such or similar

merchandise is freely sold, or, in the absence of sale, offered for sale, in the usual wholesale quantities and in the ordinary course of trade. The court stated that plaintiff sought to avoid this total burden by contending that the sole issue was whether or not the appraiser erred in failing to deduct the invoiced items for ocean freight and marine insurance in finding statutory export value. Plaintiff in the incorporated case cited and relied upon *John A. Steer & Co. v. United States*, 30, Cust. Ct. 504, Reap. Dec. 8196, and *The Shillito Company v. United States*, 5 Treas. Dec. 555, T.D. 23851. The court stated that while the general principle of law invoked by plaintiff has had judicial sanction since 1890 in the cited cases, and others, its application in the incorporated case was open to question. The plaintiff there asserted that the appraiser failed to deduct the invoiced items of ocean freight and marine insurance. However, the court found "there is not a scintilla of evidence in the instant record to establish that the appraised value was ascertained in that manner." The foregoing quoted expression is applicable to the factual situation in the case here under consideration.

As in the case at bar, the invoice before the appraiser in the incorporated case recited a c.i.f. price per dozen of each imported article, which price was stated to include certain enumerated export charges for ocean freight and insurance. The appraiser there, as here, found a price per dozen which was equal to the invoiced c.i.f. price, to be the value of each imported item. The court stated that there was nothing to show that the value adopted by the appraiser "embraced any or all of the charges listed, or, if it did, whether such charges were included in the same amounts as those specified on the invoice."

In the case here under consideration, the importer introduced evidence through Mr. Pan to the effect that the included invoiced charges for ocean freight and insurance were "estimated costs" added to an alleged f.o.b. price, to constitute a c.i.f. price. Government counsel objected to such testimony (R. 9–31). Mr. Pan stated that in *estimating* he "tried to be accurate" but that there were instances where *actual* ocean freight and insurance would be lower than estimated charges. He also testified that this would be accounted for because shipments were based upon the "conference rate and sometimes the shipment by non-conference." The former was *higher* while the latter was lower, and "sometimes the freight rates fluctuate and often changes" (R. 34).

In the incorporated case, the court stated, page 580, that—

Faced with an appraisement at unit prices, net, packed, plaintiff, in the instant case, did not have the privilege of isolating any portion thereof as attributable to marine insurance and ocean freight and of contending that by reason of being so designated on the invoice these amounts were not properly a part of the appraised value. It was re-

quired, instead, to prove that the appraised value was incorrect and to establish the claimed value in accordance with the statutory formula therefor.

The foregoing is apropos here. As heretofore noted, plaintiff here attempted to meet its burden by establishing that contested charges were ascertained by *estimating* the amount thereof, by taking an "average of several ports in the United States" (R. 66). Proof based upon approximations, estimations, and probabilities are *not* acceptable. This principle has been held to apply in attempting to show general expenses and profits in the ascertainment of *United States value* under section 402a(e) of the Tariff Act of 1930, as amended, *supra. Millmaster International, Inc., et al.* v. *United States*, 58 Cust. Ct. 711, R.D. 11304, application for review pending. Proof also to establish cost of production, as a basis for appraisement "must be based on actual costs, and not estimates or approximations." *Hamers Company* v. *United States*, 51 Cust. Ct. 407, 413, Reap. Dec. 10595, citing *Zigmund Loew* v. *United States*, 2 Cust. Ct. 861, Reap. Dec. 4529, involving *estimates* in ascertaining *cost of production*, and *United States* v. *International Graphite & Electrode Corp.*, 25 CCPA 74, T.D. 49066, involving *average* prices in ascertaining *United States value.* See also *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407, involving an *estimate* for *profit in cost of production.* An average percentage of costs during a year is not the cost of materials and labor at a time specified in the statute in ascertaining *cost of production. F. C. Gerlach & Sons, Inc.* v. *United States*, 60 Cust. Ct. 733, R.D. 11462, decided January 10, 1968.

It should follow that the testimony of Mr. Pan, to the effect that he *estimated* or tried to estimate the cost of ocean freight and insurance, may *not* be accepted as sufficient to establish the actual ocean freight and insurance in the entries under consideration in ascertaining the *export value* of the imported merchandise. Plaintiff has thus failed to meet the burden of establishing that the appraised values are erroneous and has also failed to prove export values different from the appraised values.

The alleged c.i.f. and f.o.b. prices, as well as the *estimated* cost of ocean freight and insurance are set forth in "Appendix 'A'" attached to plaintiff's brief. That such prices and costs may *not* be accepted in place of *actual* offered prices and costs for ocean freight and insurance is shown by "Schedule B" attached to defendant's brief. The latter schedule details many of the involved entries of imported items, their order numbers, date of exportation, style numbers, c.i.f. price per dozen, ocean freight and insurance, volume per invoice, and f.o.b. price per dozen. As an example typical of numerous other instances, style numbers 2601, 2602, and 2603 aggregating 744 dozen aprons were imported in R63/7032, the initial case herein. In that appeal, ocean

freight is shown as $97.22 and insurance as $7.35, for a total of $104.57. The c.i.f. price per dozen is indicated as $2.45. When $104.57 is divided by 744 the figure of $0.14 is arrived at as the cost of inland freight and insurance, per dozen. When the total invoiced inland freight and insurance of $104.57 is subtracted from the total invoice c.i.f. price of $1,822.80, the result is $1,718.23. When the latter sum is divided by 744, the result is $2.31 as the f.o.b. price. The testimony of Mr. Pan (R. 17, 18) shows that the arithmetical difference between the c.i.f. and f.o.b. prices comprises *estimated* ocean freight and insurance. As to the above three items (R. 29), by stipulation of counsel, it was agreed that (R. 25, 31) Mr. Pan would testify that the c.i.f. price was $2.45 which included *estimated* ocean freight and insurance of $0.20, with an f.o.b. price of $2.25 (R. 29). As noted above, $0.14 would represent the ocean freight and insurance as invoiced and *not* $0.20 as testified to by Mr. Pan. Thus the alleged *estimated* f.o.b. price would be $2.25 as against the *invoiced*, calculated f.o.b. price of $2.45 less $0.14, or $2.31. Page 20 of plaintiff's brief asserts that the f.o.b. prices are "as identified in said Schedule [sic] 'A'," which in the illustration is referred to at page 3 of appendix "A" as $2.25, which is plaintiff's claimed f.o.b. price.

In the incorporated case, the court indicated that deductions for *actual* ocean freight and insurance from uniform c.i.f. prices to Luckytex could result in differing net values for the same merchandise exported at or about the same time which the law does not contemplate. (56 Cust. Ct. at page 581, citing cases.) In the current case, plaintiff's brief, page 17, states:

* * * Accepting the "differing net value" theory relied upon by the court in the incorporated case as disqualifying use of *sales* prices, an obvious alternative solution is presented. If the actual sales prices, less the actual non-dutiable charges included therein, are thus technically disqualified, under the statute, there is a constructive absence of sales, and resort may properly be had to offers—in this case, the freely offered f.o.b. prices testified to by Mr. Pan and summarized in Appendix A. * * *

citing *Aceto Chemical Co. Inc.* v. *United States*, 51 CCPA 121, C.A.D. 846.

In the above cited case, the court was satisfied that a single list price *was freely offered to all purchasers*, at which they could buy and, therefore, they could *not* consider the provisions of section 402(f) (1)(B) relating to merchandise freely offered in the ordinary course of trade to one or more selected purchasers. In the case at bar, Mr. Pan's testimony was based upon memoranda allegedly taken from the exporter's records by *other persons not identified*, to which the witness referred while testifying, but which was *not* introduced into evidence. Nor were the books or records of the exporter produced or offered in evidence. This testimony as to alleged offers related to *such*

merchandise sold to plaintiff, and was in each and every instance coupled with *estimated* costs for ocean freight and insurance. The invoices in all of the entries before the court show *only* c.i.f. prices, with such *estimated* charges included. The charges are hereinabove shown to be erroneous. To deduct such *estimated* charges from the invoiced unit prices would be to supply from imagination an essential element that the remainder constituted a genuine *per se* value for the goods. *United States* v. *Malhame & Co.*, 19 CCPA 164, 171, T.D. 45276.

The effect of Mr. Pan's testimony in respect to free offers at f.o.b. prices for *such* merchandise, accordingly, raises doubt and uncertainty as to the selling price of the merchandise, *per se*. In any event, the court is not inclined to give this testimony much credence, on the record herein, in ascertaining a value based upon alleged freely offered prices on an f.o.b. basis by the exporter herein. There is no evidence, documentary or oral concerning the method or means by which this exporter made the alleged offers, or to whom or where they were made. As there are no sales shown of *such* merchandise to other than plaintiff, it is clear on the record, that the exporter did *not* offer *such* merchandise to other United States purchasers. In the incorporated case, only so-called "odd-lots" or "close-outs," with broken styles and small quantities, not considered as a regular or usual part of business, were sold to the United States customers of *such* merchandise.

Furthermore, there is no evidence of sales or offers of such or similar merchandise by other Hong Kong manufacturing exporters. Mr. Pan testified that the exporter and four other named firms in Hong Kong were associated with Textile Alliance, Ltd., as well as other firms that were not named (R. 44–45). Those named only spin, or finish, or dye, or weave fabrics purchased by the exporter according to the incorporated record. Whether or not the unnamed Hong Kong firms or other manufacturers sold merchandise such or similar to that sold to plaintiff for export to the United States is not shown in the record. It would be proper to consider such *sales* by other Hong Kong exporters before considering the alleged *free offers* by the exporter herein. It is *only* where no *sales* of such or similar merchandise are made that valuation may be based upon *offers*. *Haddad & Sons, Inc.* v. *United States*, 56 Cust. Ct. 792, A.R.D. 205, citing *W. J. Byrnes & Company* v. *United States*, 50 Cust. Ct. 406, Reap. Dec. 10451. See also *Henry Picard, Jr.* v. *United States*, 57 Cust. Ct. 689, R.D. 11242.

In *F. W. Kuehne Co.* v. *United States*, 12 Cust. Ct. 386, 389, Reap. Dec. 5985, the court states "* * * I believe I am warranted in accepting the lowest price indicated in an *actual sale* as more accurately reflecting the true market value than even *bona fide* offers." [Emphasis supplied.] Affirmed *United States* v. *F. W. Kuehne Co.*, 14 Cust. Ct. 356, Reap. Dec. 6110. Note *F. W. Myers & Co. Inc.* v. *United States*,

60 Cust. Ct. 716, R.D. 11454, decided January 8, 1968, and cases cited therein.

In *United States* v. *Meadows Wye & Co., Inc.* (*F. A. MacCluer, Inc.*), 15 Ct. Cust. Appls. 451, T.D. 42643, the court stated that it was the obvious intent of the lawmakers to fix foreign value (§ 402(b) of the Tariff Act of 1922) "* * * upon, first, the wholesale selling price of *the same* merchandise abroad, and, in case there be no such merchandise so sold, then to fix dutiable value by the wholesale selling price of *similar* merchandise, and we so construe the statute." [Emphasis copied.]

Mr. Pan testified on cross-examination that he had no copies of *offers* to other firms (R. 63). Under redirect examination, he testified he did not have copies of such offers (R. 71). At R. 72 he testified:

Q. Would you therefore have access to any written quotations which were made in 1961 and 1962 or have they been destroyed?—A. They probably have been destroyed.

Such testimony lacks substantial proof especially when it is shown by the current invoices that *all* sales to Luckytex were on a c.i.f. basis only, and that *other* United States purchasers were interested in *better quality and better made garments* (R. 72). Accordingly, there could not be free offers of *such* merchandise. Moreover, whether the free offers were or were not of *similar* merchandise, or what factors made the merchandise *similar*, is *not* of record.

An examination of plaintiff's collective exhibit 1 discloses numerous invoices showing sales at c.i.f. prices to United States purchasers other than plaintiff, as well as numerous sales at f.o.b. prices to United States purchasers other than plaintiff. Mr. Pan testified that they were obtained by somebody in the shipping department of the exporter in Hong Kong at his request and kept "maybe in packing cases and maybe stored away. * * * They are in the warehouse so I don't know where" (R. 59). The sales to *others than plaintiff* are alleged by Mr. Pan to be of "different merchandise" (R. 54–55). He did not know whether all invoices for 1960, 1961, and 1962 are contained in plaintiff's collective exhibit 1, but that "To the best of my knowledge, all the invoices are here" (R. 74). Accordingly, there are no sales of record, of *such* merchandise to *others* than plaintiff by the exporter, and no satisfactory proof of offers of sales by the exporter of similar merchandise or of the lack of such offers for sale by any *other* manufacturer and exporter in Hong Kong for exportation to the United States producing merchandise *such* or *similar* or of the same class or kind as that sold to plaintiff herein. As previously observed, it is appropriate to ascertain whether such or similar merchandise, or of the same class or kind, was actually sold by other Hong Kong manufacturers for home consumption therein or for export to the United States before

the court may consider the alleged and unsupported allegation of "free offers" by the exporter herein to unnamed United States purchasers of merchandise that is not established as such or similar to that sold to Luckytex.

There is also a lack of satisfactory evidence as to whether or not the "ordinary course of trade" as conducted by the exporter herein is the "ordinary course of trade" contemplated by section 402(f) (2), *supra*. Note *Chr. Bjelland & Co., Inc.* v. *United States*, 52 CCPA 38, C.A.D. 855.

Plaintiff's brief relies upon *Kobe Import Co.* v. *United States*, 43 CCPA 136, C.A.D. 620, where the plaintiff's witness, Louis Josephson, a partner, had been in business in Shanghai for several years prior to the purchase of the merchandise and was familiar generally with market conditions, and where the affidavit of the commissionaire, C. Y. Chen, was in evidence. Josephson testified as to usual wholesale quantity and whether the above city in China, or Japan was the principal market, and that he was given no better price. Chen's affidavit, quoted in full before the appellate term in *United States* v. *Kobe Import Co.*, 34 Cust. Ct. 564, 566, 567, A.R.D. 60, shows that he was a resident of Shanghai, is a buying and shipping agent, was familiar with the wholesale market in that city and with prices at which the merchandise was quoted and offered for sale and the range of quantities; that Shanghai is the principal market; that the merchandise was purchased under open market conditions without special arrangements as to price; that the purchase prices were freely offered prices by the sellers and others in the usual wholesale quantity and in the ordinary course of trade, and that the quantities purchased were the usual, ordinary wholesale quantities of such or similar merchandise. The court *reversed* A.R.D. 60 and remanded the case for further proceedings, stating at page 141 that—

\* \* \* we are of the opinion that the finding of the trial court [26 Cust. Ct. 678, R.D. 7998] that the export values of the merchandise are the invoice unit prices was proper, and was sufficiently supported by the evidence. \* \* \*

Qualitative evidence of the above force and effect is not apparent in the case at bar. Nor are the prices paid or invoiced to the importer herein acceptable even under the plaintiff's theory of the case and its concession to the effect (brief, page 17) that the prices to the importer may not be accepted because it would result in different net values for the same merchandise exported at or about the same time because of differences in charges for ocean freight and insurance, as held by the court in the incorporated case.

On the instant record the court must conclude that plaintiff has failed to make out a *prima facie* case to overcome the presumptively

correct appraised values and to establish other correct values for each of the numerous imported items.

The court makes the following findings of fact on the record herein:

1. The imported merchandise consists of numerous items of cotton wearing apparel worn by either men, women, or children, which was exported from Hong Kong by Asia Industrial Development Co., Ltd., between December 20, 1960, and October 16, 1962.

2. Counsel agree that export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the proper basis for determining the value of the imported merchandise, and I so find.

3. The entry in each case was made at the invoiced unit c.i.f. price, less the included separately stated total charges for ocean freight and insurance.

4. The merchandise in each case was appraised on the basis of export value as defined, *supra*, at the invoiced unit price, net packed, for each invoiced item.

5. There is a failure of proof as to whether or not other manufacturers of such or similar merchandise sold or freely offered their merchandise in Hong Kong for home consumption or for exportation to the United States during the period here involved.

6. There is a failure of proof as to whether or not the method of doing business by the exporter herein is compatible with the ordinary course of trade in Hong Kong by other manufacturers of such or similar merchandise as provided for by the export valuation statute, *supra*.

7. That whether the appraised value included charges for ocean freight and insurance is not discernible from the appraised value or on the evidence of record.

8. There is no evidence of record which establishes that the appraised values are erroneous or to show other statutory values for the imported merchandise.

The court, on the record, makes the following conclusions of law:

1. Plaintiff has failed to offer evidence which overcomes the statutory presumption of correctness attaching to the appraiser's finding of values. 28 U.S.C., section 2633.

2. The appraisements are not separable into the components of *per se* values, and ocean freight and insurance and the rule applicable in *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371, may not be invoked.

3. The statutory export value as defined, *supra*, for each imported item is represented by the value found by the appraiser in each reappraisement appeal involved herein.

Judgment will be entered accordingly.